IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIOLOGICAL TREATMENT SYSTEMS, LLC, a New Jersey limited liability company, and UNIVERSAL TECHNICAL RESOURCE SERVICES, INC., a New Jersey corporation, Plaintiffs, v. ENVIRONMENTAL SYSTEMS MANAGEMENT INTERNATIONAL, LLC, a Pennsylvania limited liability company and MANAF FARHAN, Ph.D., Individually and as Managing Member of Environmental Systems Management International, LLC, Defendants. | CIVIL ACTION NO. 02-4642 |

## AMENDED COMPLAINT

Biological Treatment Systems, LLC ("BTS") and Universal Technical Resource Services, Inc. ("UTRS"), by and through their undersigned attorneys, assert this Amended Complaint against Environmental Systems Management International, LLC ("ESMI") and Manaf Farhan, Ph.D., ("Farhan"), as follows:

## PARTIES

1.      Biological Treatment Systems, LLC, is a New Jersey limited liability company with offices located at 950 North Kings Highway, Suite 306, Cherry Hill, New Jersey 08034.

2. Universal Technical Resource Services, Inc. is a New Jersey corporation with offices located at 950 North Kings Highway, Suite 306, Cherry Hill, New Jersey 08034.

3. Environmental Systems Management International, LLC, is a Pennsylvania limited liability company with offices located at 1600 Hagys Ford Road, Suite 114, Penn Valley, Pennsylvania 19072.

4. Manaf Farhan, Ph.D., is an individual who resides at 160 Paxton Hollow Road, Media, Pennsylvania 19063.

## JURISDICTION AND VENUE

5. This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship between plaintiffs and defendants and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

6. Venue is properly before this Court pursuant to 28 U.S.C. §1391(a)(1).

## FACTUAL BACKGROUND

7. On July 12, 2002, UTRS and BTS initiated this lawsuit by filing a complaint in the United States District Court for the Eastern District of Pennsylvania, Civil Action number 02-4642 ("Compalint").

8. As of December 3, 1997, UTRS and ESMI entered into an operating agreement ("Operating Agreement") pertaining to the conduct of the business and affairs of BTS, a true and correct copy of which is attached to the Complaint as Exhibit A.

9. Pursuant to the terms of the Operating Agreement, UTRS and ESMI agreed to become members of a newly created limited liability company, BTS. See Complaint, Exhibit A, paragraphs 2.1, 2.2, and 2.8.

10. The Operating Agreement makes clear that the purpose of creating the new entity, BTS, was and is for BTS to develop, construct, operate and maintain full-scale anaerobic fluidized bed reactors ("AFBR") world-wide, and in conjunction therewith develop and apply the full-scale AFBR technology and commercially market the process, systems, and designs, and obtain and maintain needed inventory, supplies and equipment for the operation of BTS's business.  See Complaint, Exhibit A, Article II – Formation and Business provisions.

11. The Operating Agreement contemplates that AFBR facilities would use the PurEffluent™ process, developed by BTS, to treat and convert liquid organic wastes into carbon dioxide and methane gas, allowing the methane gas to be used for energy co-generation on-site.  See Complaint, Exhibit A, p.1, Background provision.

12. ESMI and UTRS entered into the Operating Agreement with the intent to "commercialize the technology for a full-scale anaerobic fluidized bed reactor used to treat and convert liquid organic waste into carbon dioxide and methane gas, allowing the methane gas to be used for energy co-generation on-site, and intend for the Company [BTS] to market and sell these services."  See Complaint, Exhibit A, at p.1, Background provision.

13. As a party to the Operating Agreement, ESMI agreed to abide by the restrictive covenants set forth in section 6.4 of the Operating Agreement.

14. Section 6.4.1 of the Operating Agreement states in relevant part:

> Except as provided in Article VII below, during the time a Member holds an interest in the Company and for a period of five (5) years after a Member's interest in the Company terminates, such Member directly or indirectly (through one of its equity owners, officers, directors or otherwise) will not (i) within a radius of fifty (50) miles from any existing or then contemplated Facility (approved for development by the Managing Committee) engage or participate in, or render advisory or other services to, or become a shareholder, director, officer, member or partner, with any business entity that competes with the Company; (ii) no matter

> where located, sell or offer to sell competing services to any client or customer of the Company …"

See Complaint, Exhibit A, paragraph 6.4.1.

15.   Section 6.4.2 of the Operating Agreement provides:

> Each Member, shall keep, and each Member shall cause each of its officers, directors, shareholders and employees to keep, in strict confidence, at all times while it is a Member and subsequent to termination of its interest in the Company, and shall not at all times while it is a Member or at any time thereafter, disclose, make available or divulge to any person, firm or corporation, or use directly or indirectly for his own or its own benefit to the benefit of others, any "Confidential Information", except as required by law. The term "Confidential Information" shall mean information not generally known to the public which was disclosed to a Member or made known to a Member as a consequence of and through its association with the Company, including, without limitation, submission, bidding and proposal procedures of Company, methods of pricing, profit mark-ups, marketing, methods of operation, designs, plans, techniques, development methods, including, but not limited to, financing arrangements and ownership structures, methods of buying and selling, prices paid to and names of suppliers or sub-contractors, advertising formats, promotional items and practices, and salaries paid to officers and employees of the Company.

See Complaint, Exhibit A, paragraph 6.4.2.

16.   The Operating Agreement allows any Member the right to seek injunctive relief against threatened conduct that will cause it irreparable injury. See Complaint, Exhibit A, paragraph 8.1.3.

17.   In 1997, BTS (also, "Employer"), and Farhan (also, "Employee"), entered into an employment agreement ("Employment Agreement"), a true and correct copy of which is attached to the Complaint as Exhibit B.

18.   The Employment Agreement provides:

> Unless expressly waived by Employer in writing, during the term of employment and for a period of eighteen (18) months after

> Employee's employment is terminated or ceases for any reason as provided in this Agreement, Employee shall not, directly or indirectly, be a principal, partner, stockholder (other than the holder of not more than one (1%) percent of the shares of stock of a Employer whose shares are publicly traded), officer, director, employee, agent, manager of, or advisor, to, any business which sells or provides, attempts to sell or provide or offers to sell or provide services of the same type now being sold or otherwise provided, or during the term of employment which are sold or otherwise provided, by Employer, within a fifty (50) mile radius of any AFBR Facility of Employer.

See Complaint, Exhibit B, paragraph 8.1.

19. Section 8.5 of the Employment Agreement prohibits Farhan from disclosing confidential information. Section 8.6 of the Employment Agreement defines "confidential information" to mean:

> information not generally known to or disclosed through sources other than Employee to the public, which was disclosed to Employee or known to Employee as a consequence of or through his employment by Employer, processes, services, marketing or methods of operation and the details relating thereto, including without limitation, trade secrets, research, designs, plans, software, engineering, inventions, development work, formulae, data, client information, programs, the names of suppliers or contractors, the names of clients or accounts, methods of buying, selling, bidding and bid procedures, prices charged to clients or accounts, profit markups and discounts.

20. The Employment Agreement also requires Farhan to devote his full time and attention and good faith efforts to the performance of his duties, and prohibits him, absent written consent of the Managing Committee of Employer, from engaging in "<u>any other business activity requiring any of his time</u> (whether or not such business activity is pursued for gain, profit or other pecuniary advantage)." See Complaint, Exhibit B, paragraph 3 (emphasis added).

21. The Employment Agreement grants BTS the right to terminate Farhan's employment for cause with five days notice. The term "cause" includes, *inter alia*, willful

misconduct involving the Employee's dishonesty, embezzlement, fraud or conspiracy against Employer. See Complaint, Exhibit B, paragraph 6.1.

22. BTS operates a facility and lab at 349 Montgomery Avenue, Suite #3, Bala Cynwyd, Pennsylvania, 19004 ("Bala Cynwyd facility").

23. On Monday, July 8, 2002, Albert Zalcmann, General Manager of BTS, went to the Bala Cynwyd facility to conduct business.

24. Once there, Mr. Zalcmann found a note on a desk that contained four bullet points. One read "take computer home" and one read "take EMG files/paperwork home." This lead Mr. Zalcmann to begin going through the files at the Bala Cynwyd facility.

25. Farhan has been competing with BTS, disclosing confidential information of BTS, using BTS confidential information for his own gain and for the gain of companies owned by Farhan, devoting substantial time to business activities other than his duties to BTS, and using BTS premises, equipment and personnel for Farhan's businesses unrelated to his responsibilities of operating BTS and in direct conflict with his responsibilities to BTS. See verification of Albert Zalcmann, attached to the Complaint as Exhibit C.

26. Upon information and belief, Farhan owns a company called EMG International, Inc. that uses and/or has utilized without the authorization, knowledge or consent of BTS, BTS's Bala Cynwyd facility to analyze materials sent to him by third parties and then sent invoices for services rendered to those third parties. See, e.g., facsimile transmission and invoices sent to GLA Laboratories, Inc. from Farhan as Project Manager of EMG, attached as Tab 1 to Exhibit C of the Complaint.

27. In 1999, Farhan also sent a proposal to the Ben Franklin Technology Partners of Southeastern Pennsylvania seeking funds to advance the business of EMG ("Ben

Franklin Proposal"), a copy of which is attached to Exhibit C at Tab 2 of the Complaint. In the Ben Franklin proposal, Farhan claims that: EMG was created in 1996 with the specific concentration on developing and commercializing the AFBR technology for full-scale wastewater treatment applications; Farhan heads up a team of highly qualified personnel that can facilitate project development and execution; Mr. Zalcmann serves as EMG's Business Manager; Farhan is the CEO and President of EMG; in 1998 EMG acquired office space in Bala Cynwyd, Pennsylvania and constructed an analytical laboratory; and EMG is poised to successfully commercialize the AFBR technology. The office address, phone number, and fax number of EMG as stated in the proposal are the address, phone number and fax number of BTS. See Tab 2 of Exhibit C of the Complaint.

28. Mr. Zalcmann has never served in any capacity for EMG. The Bala Cynwyd "office" of EMG is in reality the office and analytical laboratory of BTS.

29. BTS at no time authorized or otherwise permitted Farhan or EMG or any other person or entity to use the offices or facilities of BTS for anything other than the business of BTS.

30. In the Ben Franklin proposal Farhan describes in detail the confidential technology and processes of BTS, provides photographs of BTS's Bala Cynwyd Facility but fraudulently identifies the laboratory and facilities as that of EMG, and fraudulently states that EMG received a loan in the amount of $187,500 from UTRS.

31. As evidenced by a letter from Farhan, EMG received and accepted funding from the Ben Franklin program. See letter dated May 27, 1999, attached to Exhibit C at Tab 3 of the Complaint.

32. Farhan, again through his company EMG, prepared and submitted an Executive Summary for the 2002 Angel Venture Fair ("Angel Venture Fair Summary") and participated in the 2002 Angel Venture Fair in attempts to advance the AFBR business of EMG in direct competition with BTS and in violation of the express terms of his employment agreement. See 2002 Angel Venture Fair documents, including Executive Summary for Angel Venture Fair submitted by Farhan on behalf of EMG, attached to Exhibit C at Tab 4 of the Complaint.

33. In the Angel Venture Fair Summary, Farhan, through EMG, again utilized and disclosed BTS's confidential and proprietary information. Such use was not authorized, consented to or approved by BTS or UTRS.

34. In a document titled "2002 Angel Venture Fair" that Farhan presumably sent in connection with his desire to participate in the fair, Farhan fraudulently and misleadingly claimed that UTRS was a current investor of EMG. Farhan also states in this document that the use of funds would be used to "design, build and operate a full-scale PurEffluent™ wastewater treatment facility," the very purpose for which BTS was created. See Exhibit C at Tab 4 of the Complaint.

35. On July 9, 2002, BTS terminated Farhan's employment effective July 14, 2002.

36. Unless this Court immediately restrains and enjoins ESMI and Farhan from any further breaches of the Operating Agreement and the Employment Agreement, plaintiffs will suffer immediate and irreparable harm and injury, including but not limited to the continued improper use of plaintiff's confidential and proprietary business information, the loss

of plaintiff's customers and prospective customers and the potential destruction of plaintiff's business and good will.

37. Plaintiffs have no adequate remedy at law.

### Count I – Breach of Contract
### UTRS v. ESMI

38. UTRS repeats each of the foregoing allegations as though fully set forth herein.

39. The Operating Agreement is a valid, binding and enforceable contract.

40. ESMI deliberately, willfully and wantonly breached and continues to breach its contractual agreement with UTRS by, among other things, using BTS's confidential and proprietary information without authorization for ESMI's benefit, soliciting BTS's customers and potential customers, failing to return confidential and proprietary information, and otherwise attempting to destroy the business of BTS.

41. As a result of the foregoing breaches, which strike at the very heart and essence of the contractual obligations of the parties, UTRS has been harmed and injured.

**WHEREFORE**, UTRS demands judgment against ESMI as follows:

  A. temporarily and preliminarily restraining and enjoining ESMI from (i) using the confidential and proprietary information of BTS in any manner and (ii) contacting, attempting to contact or otherwise soliciting BTS's customers and prospective customers as specified in the Operating Agreement;

  B. temporarily and preliminarily restraining and enjoining ESMI from competing with BTS pursuant to the express terms of the Operating Agreement;

  C. for attorneys' fees, interest and costs of suit; and

  D. such other relief as the Court deems equitable and proper.

## Count II – Breach of Contract
## BTS v. Farhan

42.     BTS repeats allegations 1 through 41 as though fully set forth herein.

43.     The Employment Agreement is a valid, binding and enforceable contract.

44.     Farhan deliberately, willfully and wantonly breached and continues to breach his contractual agreement with BTS by, among other things, using BTS's confidential and proprietary information without authorization for his benefit and the benefit of third parties, soliciting BTS's customers and potential customers, failing to return confidential and proprietary information, and otherwise attempting to destroy the business of BTS.

45.     As a result of the foregoing breaches, which strike at the very heart and essence of the contractual obligations of the parties, BTS has been harmed and injured in an amount in excess of seventy-five thousand dollars ($75,000.00).

**WHEREFORE**, BTS demands judgment against Farhan as follows:

  A.     temporarily, preliminarily and permanently restraining and enjoining Farhan from (i) using the confidential and proprietary information of BTS in any manner and (ii) contacting, attempting to contact or otherwise soliciting BTS's customers as specified in the Employment Agreement;

  B.     temporarily, preliminarily and permanently restraining and enjoining Farhan from competing with BTS pursuant to the express terms of the Employment Agreement;

  C.     ordering Farhan to return to BTS immediately any and all confidential and proprietary information of BTS that is in the possession, custody or control of Farhan;

  D.     declaring and adjudging that the Employment Agreement is valid, binding and enforceable;

  E.     specifically and permanently enforcing the Employment Agreement;

  F.     ordering Farhan to provide a full accounting to BTS of any and all revenues and profits received from Farhan's

businesses competing with the business of BTS and anything related to Farhan's marketing, sale and involvement with products and/or services of BTS under the guise of other businesses;

G.   compelling Farhan to disgorge any and all such revenues and profits and awarding payment of same to BTS;

H.   for compensatory, consequential and punitive damages;

I.   for attorneys' fees, interest and costs of suit; and

J.   all such other relief as the Court deems equitable and proper.

### Count III – Conversion
### UTRS v. ESMI

46.   UTRS repeats allegations 1 through 45 as though fully set forth at length herein.

47.   UTRS has an undisputed right to the ownership and immediate possession of its confidential and proprietary information.

48.   ESMI unlawfully has taken, stolen and converted to its own benefit and use BTS's confidential and proprietary information.

49.   As a result of the foregoing conversion, UTRS has been harmed and injured.

**WHEREFORE**, UTRS demands judgment against ESMI as follows:

A.   temporarily and preliminarily restraining and enjoining ESMI from (i) using the confidential and proprietary information of BTS in any manner and (ii) contacting, attempting to contact or otherwise soliciting BTS's customers as specified in the Operating Agreement;

B.   temporarily and preliminarily restraining and enjoining ESMI from competing with BTS pursuant to the express terms of the Operating Agreement;

  C. for attorneys' fees, interest and costs of suit; and

  D. such other relief as the Court deems equitable and proper.

### Count IV – Conversion
### BTS v. Farhan

50. BTS repeats allegations 1 through 49 as though fully set forth at length herein.

51. BTS has an undisputed right to the ownership and immediate possession of its confidential and proprietary information.

52. Farhan unlawfully has taken, stolen and converted to his own benefit and use BTS's confidential and proprietary information.

53. As a result of the foregoing conversion, BTS has been harmed and injured.

**WHEREFORE**, BTS demands judgment against Farhan as follows:

  A. temporarily, preliminarily and permanently restraining and enjoining Farhan from (i) using the confidential and proprietary information of BTS in any manner and (ii) contacting, attempting to contact or otherwise soliciting BTS's customers as specified in the Employment Agreement;

  B. temporarily, preliminarily and permanently restraining and enjoining Farhan from competing with BTS pursuant to the express terms of the Employment Agreement;

  C. ordering Farhan to return to BTS immediately any and all confidential and proprietary information of BTS that is in the possession, custody or control of Farhan;

  D. declaring and adjudging that the Employment Agreement is valid, binding and enforceable;

  E. specifically and permanently enforcing the Employment Agreement;

  F. ordering Farhan to provide a full accounting to BTS of any and all revenues and profits received from Farhan's

businesses competing with the business of BTS and anything related to Farhan's marketing, sale and involvement with products and/or services of BTS under the guise of other businesses;

G.  compelling Farhan to disgorge any and all such revenues and profits and awarding payment of same to BTS;

H.  for compensatory, consequential and punitive damages;

I.  for attorneys' fees, interest and costs of suit; and

J.  all such other relief as the Court deems equitable and proper.

### Count V – Breach of Fiduciary Duties
### UTRS v. ESMI

54.  UTRS repeats allegations 1 through 53 as though fully set forth at length herein.

55.  At all relevant times, ESMI was given access to the confidential and proprietary information of BTS.

56.  In entering into its contractual agreement with UTRS, ESMI promised and agreed to act as a fiduciary with respect to BTS's confidential and proprietary information and also promised and agreed to advance and protect BTS's business interests.

57.  ESMI has breached its fiduciary duties and obligations to UTRS by using and misappropriating the information for its own purposes and benefit, as well as for the benefit of other entities.

58.  As a result of the foregoing improper conduct of ESMI, UTRS has been harmed and injured.

**WHEREFORE**, UTRS demands judgment against ESMI as follows:

  A. temporarily and preliminarily restraining and enjoining ESMI from (i) using the confidential and proprietary information of BTS in any manner and (ii) contacting, attempting to contact or otherwise soliciting BTS's customers as specified in the Operating Agreement;

  B. temporarily and preliminarily restraining and enjoining ESMI from competing with BTS pursuant to the express terms of the Operating Agreement;

  C. for attorneys' fees, interest and costs of suit; and

  D. all such other relief as the Court deems equitable and proper.

### Count VI – Breach of Fiduciary Duties
### BTS v. Farhan

  59. BTS repeats allegations 1 through 58 as though fully set forth at length herein.

  60. At all relevant times, Farhan was given access to the confidential and proprietary information of BTS.

  61. In entering into its contractual agreement with BTS, Farhan promised and agreed to act as a fiduciary with respect to BTS's confidential and proprietary information and also promised and agreed to advance and protect BTS's business interests.

  62. Farhan has breached his fiduciary duties and obligations to BTS by using and misappropriating the information for his own purposes and benefit, as well as for the benefit of other entities.

  63. As a result of the foregoing improper conduct of Farhan, BTS has been harmed and injured.

  **WHEREFORE**, BTS demands judgment against Farhan as follows:

      A.      temporarily, preliminarily and permanently restraining and enjoining Farhan from (i) using the confidential and proprietary information of BTS in any manner and (ii) contacting, attempting to contact or otherwise soliciting BTS's customers as specified in the Employment Agreement;

      B.      temporarily, preliminarily and permanently restraining and enjoining Farhan from competing with BTS pursuant to the express terms of the Employment Agreement;

      C.      ordering Farhan to return to BTS immediately any and all confidential and proprietary information of BTS that is in the possession, custody or control of Farhan;

      D.      declaring and adjudging that the Employment Agreement is valid, binding and enforceable;

      E.      specifically and permanently enforcing the Employment Agreement;

      F.      ordering Farhan to provide a full accounting to BTS of any and all revenues and profits received from Farhan's businesses competing with the business of BTS and anything related to Farhan's marketing, sale and involvement with products and/or services of BTS under the guise of other businesses;

      G.      compelling Farhan to disgorge any and all such revenues and profits and awarding payment of same to BTS;

      H.      for compensatory, consequential and punitive damages;

      I.      for attorneys' fees, interest and costs of suit; and

      J.      all such other relief as the Court deems equitable and proper.

### Count VII – Misappropriation of Trade Secrets
### <u>UTRS v. ESMI</u>

64.      UTRS repeats allegations 1 through 63 as though fully set forth at length herein.

65. As defined in the Operating Agreement, BTS's confidential information constitutes trade secrets entitled to protection.

66. At all pertinent times, BTS has undertaken to maintain the strict confidential nature of its business information, which is secret and of significant economic value to UTRS and BTS.

67. ESMI has misappropriated BTS's trade secrets for its own benefit.

68. The misappropriation and improper use of BTS's' trade secrets by ESMI is continuing.  Unless ESMI is enjoined in this regard, UTRS will suffer immediate and irreparable harm and injury, with no adequate remedy at law.

**WHEREFORE**, UTRS demands judgment against ESMI as follows:

A. temporarily and preliminarily restraining and enjoining ESMI from (i) using the confidential and proprietary information of BTS in any manner and (ii) contacting, attempting to contact or otherwise soliciting BTS's customers as specified in the Operating Agreement;

B. temporarily and preliminarily and permanently restraining and enjoining ESMI from competing with BTS pursuant to the express terms of the Operating Agreement;

C. for attorneys' fees, interest and costs of suit; and

D. all such other relief as the Court deems equitable and proper.

### Count VIII – Misappropriation of Trade Secrets
### BTS v. Farhan

69. BTS repeats allegations 1 through 68 as though fully set forth at length herein.

70. As defined in the Employment Agreement, BTS's confidential information constitutes trade secrets entitled to protection.

71. At all pertinent times, BTS has undertaken to maintain the strict confidential nature of its business information, which is secret and of significant economic value to UTRS and BTS.

72. Farhan has misappropriated BTS's trade secrets for his own benefit. The misappropriation and improper use of BTS's' trade secrets by Farhan is continuing. Unless Farhan is enjoined in this regard, BTS will suffer immediate and irreparable harm and injury, with no adequate remedy at law.

**WHEREFORE**, BTS demands judgment against Farhan as follows:

A. temporarily, preliminarily and permanently restraining and enjoining Farhan from (i) using the confidential and proprietary information of BTS in any manner and (ii) contacting, attempting to contact or otherwise soliciting BTS's customers as specified in the Employment Agreement;

B. temporarily, preliminarily and permanently restraining and enjoining Farhan from competing with BTS pursuant to the express terms of the Employment Agreement;

C. ordering Farhan to return to BTS immediately any and all confidential and proprietary information of BTS that is in the possession, custody or control of Farhan;

D. declaring and adjudging that the Employment Agreement is valid, binding and enforceable;

E. specifically and permanently enforcing the Employment Agreement;

F. ordering Farhan to provide a full accounting to BTS of any and all revenues and profits received from Farhan's businesses competing with the business of BTS and anything related to Farhan's marketing, sale and involvement with products and/or services of BTS under the guise of other businesses;

G. compelling Farhan to disgorge any and all such revenues and profits and awarding payment of same to BTS;

H. for compensatory, consequential and punitive damages;

    I.  for attorneys' fees, interest and costs of suit; and

    J.  all such other relief as the Court deems equitable and proper.

                  _____
                   Glenn A. Harris, Esquire
                   Kelly A. Walenda, Esquire
                   Attorney Id. Nos. 51222 and 70842
                   Counsel for Plaintiffs

OF COUNSEL:
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103

## **VERIFICATION**

      I, Albert Zalcmann, General Manager of BTS and President of UTRS, plaintiffs in this matter, by and on behalf of plaintiffs, do hereby certify that the foregoing factual statements contained in this Amended Complaint are true and correct to the best of my knowledge and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Dated: July ___, 2002                                    _____
                                                                                                   Albert Zalcmann

## **CERTIFICATE OF SERVICE**

       I, Kelly A. Walenda, hereby certify, that I have caused a true and correct copy of the forgoing Amended Complaint to be served via overnight mail to counsel for defendants ESMI and Manaf Farhan, Ph.D., Jonathan Hollin, Esquire, Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C.  475 Allendale Road, Suite 200, King of Prussia, PA  19406


Dated:  July  ___, 2002                                       _____
                                                                Kelly A. Walenda